# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# WESTERN DIVISION

**HOSSEIN SHARIFI**                                                                                               **PETITIONER**

**v.**                                                                                 **CIVIL ACTION NO. 5:20-cv-5-DCB-MTP**

**SHAWN R. GILLIS**                                                                                              **RESPONDENT**

## REPORT AND RECOMMENDATION

THIS MATTER is before the Court on Petitioner Hossein Sharifi's Petition for Writ of Habeas Corpus [1] pursuant to 28 U.S.C. § 2241. Having considered the parties' submissions and the applicable law, the undersigned recommends that the Court grant the Petition [1] and order that Petitioner be deported or released from Immigration and Customs Enforcement ("ICE") custody within thirty days of a favorable ruling on the Petition [1].

## BACKGROUND

On November 14, 1979, Petitioner—a citizen of Iran—entered the United States as a non-immigrant student. *See* [19-1] at 1. On July 22, 1982, Petitioner became a lawful permanent resident of the United States. *Id*. On February 6, 2014, in a Georgia state court, Petitioner was convicted of two counts of trafficking of persons for labor or sexual servitude, two counts of pandering, one count of child molestation, and two counts of statutory rape. *Id*. He was sentenced to a term of ten year, with five years to serve in custody. *Id*. On January 4, 2019, Petitioner was taken into ICE custody, and on May 30, 2019, an Immigration Judge ordered Petitioner removed from the United States to Iran. *Id*.

On January 16, 2020, Petitioner filed the instant Petition, arguing that his extended detention in ICE custody is unlawful. Petitioner seeks release from immigration custody. On March 25, 2020, the Government filed a Response [19], arguing that the Petition should be

1

denied because there is a significant likelihood of Petitioner's removal to Iran in the reasonably foreseeable future.  Petitioner filed a Rebuttal [21] on April 14, 2020.

## ANALYSIS

The controlling statute in this case, 8 U.S.C. § 1231(a)(1)(A), provides that the Attorney General has ninety days after an order of removal becomes final to deport the alien.  The Supreme Court has held that detention of aliens beyond this ninety-day period is acceptable up to six months. *See Zadvydas v. Davis*, 533 U.S. 678, 701 (2001).  This, however, does not mean that every alien not removed after six months must be released.  "After this 6-month period, once the alien provides good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut the showing." *Id*.  "[A]n alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id*.  "[D]etermining what the 'reasonably foreseeable future' really is, is a factual determination to be undertaken by the habeas court looking into the circumstance and detention length of each individual petitioner." *Kane v. Mukasey*, 2008 WL 11393137, at *4 (S.D. Tex. Aug. 21, 2008)*, superseded by Kane v. Mukasey*, 2008 WL 11393094 (S.D. Tex. Sep. 12, 2008) (finding habeas petition was moot after petitioner was deported).

"The alien bears the initial burden of proof in showing that no such likelihood of removal exists." *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006).  This burden does not require the alien to show that deportation will prove "impossible" or "show the absence of *any* prospect of removal—no matter how unlikely or unforeseeable . . . ." *Zadvydas*, 533 U.S. at 702.  "In order to shift the burden to the Government, an alien must demonstrate that the circumstances of his status or the existence of the particular individual barriers to his repatriation to his country of

origin are such that there is no significant likelihood of removal in the foreseeable future." *Galtogbah v. Sessions*, 2019 WL 3766280, at *2 (W.D. La. June 18, 2019). However, "an alien's claim must be supported by more than mere speculation and conjecture." *Id*. (internal quotations and citation omitted).

Once the alien has met his initial burden, the burden shifts to the Government to "respond with evidence sufficient to rebut the alien's showing." *Zadvydas*, 533 U.S. at 701. "[F]or detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id*.

Petitioner points out that he has been in ICE custody since January 4, 2019 and that his final removal order was issued on May 30, 2019. *See* [1] at 7. Thus, the length of Petitioner's confinement is far in excess of the six-month presumptively reasonable period prescribed by the Supreme Court in *Zadvydas*. According to Petitioner, he has cooperated with ICE, but his removal is not likely in the foreseeable future because the government of Iran has provided no indication that it will accept Petitioner.

The record supports Petitioner's assertions. Along with its Response [19], the Government provided a Declaration [19-1] by Anthony Miranda, an ICE Deportation Officer. According to Miranda, ICE submitted a travel document request to the Iranian Embassy on June 10, 2019. *See* [19-1] at 1. On July 3, 2019, ICE received a letter from the Iranian Embassy stating that Petitioner's original birth certificate and passport were required for issuance of a travel document. *Id*. at 2. Nearly five months later, on November 29, 2019, ICE officers spoke with Petitioner, who stated that his original birth certificate and passport were lost long ago. *Id*.

On December 24, 2019, ICE submitted another travel document request to the Interest Section of the Islamic Republic of Iran, and on January 30, 2020, Iranian officials interviewed

3

Petitioner. *Id*. The Iranian Consulate stated that it would not issue a travel document for Petitioner. *Id*. As Miranda points out, Petitioner left Iran in 1979 and had no passport, no birth certificate, and no living relatives in Iran. *Id*.

Thereafter, ICE was able to obtain a copy of Petitioner's passport, and on February 28, 2020, ICE submitted the passport along with a new travel document request to the Interest Section of the Islamic Republic of Iran. ICE has not received an update concerning the travel document request. *Id*.

Petitioner emphasizes that Iran has refused to issue him a travel document and that ICE has not submitted all of the documentation (original birth certificate and passport) Iran demanded. Petitioner has provided good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future. Thus, Petitioner has met his initial burden under *Zadvydas*. *See Hassoun v. Session*, 2019 WL 78984, at *4 (W.D.N.Y. Jan. 2, 2019) (finding that petitioner met his burden when he had shown that the countries with which he had an affiliation would not accept him).

The burden now shifts to the Government to rebut Petitioner's showing. The Government asserts that, based upon Miranda's declaration, "ICE believes that there is a significant likelihood of Petitioner's removal to Iran in the reasonably foreseeable future if a travel document is received." *See* [19] at 4. The Government also asserts that ICE expects Iran to issue a travel document in the reasonably foreseeable future.

The evidence of record does not support the Government's position. Iran rejected ICE's request for a travel document for Petitioner. *See* [19-1] at 2. ICE submitted another travel document request, but failed to submit Petitioner's original birth certificate, which was

4

demanded by Iran. ICE submitted the latest travel document request on February 28, 2020—more than seven month ago—and has not received a response from Iran.

Another six months have passed since the Government stated that Petitioner's removal was imminent. Yet, Petitioner remains in ICE custody.[1] Neither ICE's belief that Petitioner will be removed nor the information provided satisfy the Government's burden to rebut the showing that Petitioner will not be removed in the foreseeable future.

"[A] theoretical possibility of eventually being removed does not satisfy the government's burden once the removal period has expired and the petitioner establishes good reason to believe his removal is not significantly likely in the reasonably foreseeable future." *Kane*, 2008 WL 11393137 at *5; *see also Andreasyan v. Gonzalez*, 446 F. Supp. 2d 1186, 1189-90 (W.D. Wash. 2006) (finding that respondent had not rebutted petitioner's showing that he would not be removed when respondent repeatedly asked for "a few more weeks" to obtain travel documents). "[I]f [ICE] has no idea of when it might reasonably expect [Petitioner] to be repatriated, this Court certainly cannot conclude that his removal is likely to occur— or even that it *might* occur— in the reasonably foreseeable future." *Singh v. Whitaker*, 362 F. Supp. 3d 93, 102 (W.D.N.Y. 2019).

With no significant likelihood of removal in the foreseeable future, Petitioner's detention is now unreasonable. *See Ali v. Dep't of Homeland Sec.*, 2020 WL 1666074 (S.D. Tex. Apr. 2, 2020) (granting writ when petitioner could not be removed due to travel restrictions to Pakistan). Petitioner has been in custody awaiting removal for more than sixteen months. At this point, "Petitioner's removal need not necessarily be imminent, but it cannot be speculative." *Hassoun*, 2019 WL 78984, at *6.

---

[1] *See* https://locator.ice.gov/odls/#/index (last visited October 8, 2020).

5

As the Government has not met its burden to show that continued detention is authorized, Petitioner should be deported or released. "[T]he alien's release may and should be conditioned on any of the various forms of release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions." *Zadvydas*, 533 U.S. at 700; *see Okwilagwe v. I.N.S.*, 2002 WL 356758 (N.D. Tex. Mar. 1, 2002) (granting writ of habeas corpus but setting conditions of alien's release).

## RECOMMENDATION

For the reasons set forth above, the undersigned recommends that:

1. The Petition [1] be GRANTED and

2. The Court order Immigration & Customs Enforcement to deport Petitioner or release him subject to appropriate conditions of supervision, to be determined by Immigration & Customs Enforcement, within thirty days of the Court's order granting the Petition [1].

## RIGHT TO OBJECT

In accordance with the rules and 28 U.S.C. § 636(b)(1), any party within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the judge, the magistrate judge, and the opposing party. The district judge at the time may accept, reject, or modify in whole or in part, the recommendations of the magistrate judge or may receive further evidence or recommit the matter to this Court with instructions. The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within fourteen days after being served with a copy shall bar that party, except on grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

THIS the 9th day of October, 2020.

                                         s/ Michael T. Parker
                                        United States Magistrate Judge